UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**ALICIA S. BEATTY**                                                                                    **PLAINTIFF**

v.                                                            CIVIL ACTION NO. 3:04CV-P739-C

**JEFFERSON CO. JAIL MEDICAL DEPT.** *et al.*                                **DEFENDANTS**

**OPINION**

     The plaintiff, Alicia S. Beatty, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (DN 1). Because the plaintiff failed to exhaust available administrative remedies, the action will be dismissed.

**I. SUMMARY OF CLAIMS**

The plaintiff is currently incarcerated at the Kentucky Correctional Institution for Women ("KCIW"), but the allegations in the complaint occurred while she was incarcerated at the Jefferson County Corrections Department.[1] As defendants, she names the "Jefferson Co. Jail Medical Department," Nurse Valerie Deaton, Nurse Morris, and Grievance Director Mr. Clark. The plaintiff sues defendants Deaton, Morris, and Clark individually and in their official capacities, and she seeks monetary and punitive damages and injunctive relief.

According to the complaint, the plaintiff's left eye implant began to bleed while she was incarcerated at the Jefferson County Corrections Department. She

---

[1] Since the merger of the Louisville and Jefferson County governments on January 6, 2003, *see* Official Guide to Louisville Metro Government at http://www.loukymetro.org, the Jefferson County Corrections Department is now the Louisville Metro Department of Corrections.

claims that she was not given medication as prescribed, was not given gauze to cover her eye, and was not given a change of sheets, despite bleeding on them. She alleges that her eye socket bled constantly, causing it "to become grossly infected." According to the plaintiff, "Because of the extent of my infection due to poor medication treatment, I may never be able to receive a replacement for my eye. The bacteria has destroyed my inner tissue."

To her complaint the plaintiff attaches two memoranda and a document styled "Attachment to Claim" (emphasis omitted). The "Attachment to Claim" essentially restates the allegations in her complaint. As to the two memoranda, one is addressed to the Jefferson County Circuit Court and the other is addressed "To Whom it May Concern." In the subject line of both memoranda, the plaintiff advises that this is a class action lawsuit against the Jefferson County Jail Medical Staff.

In the first memorandum, the plaintiff more specifically reports that about a week and a half after she was incarcerated at the jail and began to sleep on the floor, her left eye socket began to bleed. She reported her condition to "the Nurses on all shifts, and the Nurse at sick call." The nurses told her that they had no gauze on their carts but advised that they would bring her some gauze, which they never did. The plaintiff spoke with Defendant Clark twice about the lack of medical attention, alleging, "After I was sentenced the Judge ordered that I get immediate medical attention, however, once again I had great difficulty receiving any

attention."

The plaintiff reports that she was sent to the Kentucky Eye Clinic three times. On the first visit she was prescribed an ointment, which "Nurses" lost two or three days after the visit. On her second visit three weeks later, she was prescribed eye drops every hour, which the "Nurses gave [] to me three times a day." After the plaintiff complained for two or three days, the "Nurses" gave her the eye drops to administer to herself. The plaintiff was supposed to follow up with Dr. Grossman, the eye specialist who removed her eye, but she was sent to the eye clinic a third time instead. The clinic personnel advised that they could do nothing more for her at that time. The plaintiff was thereafter apparently sent to the specialist or another physician because she writes, "The Doctor stated that I needed my medicines applied properly to my eye to clear up the infection. I was placed on more eye drops and an anti-biotic, as well as an ointment." She reports that her eye is still infected but that she is now receiving the "proper treatment" at KCIW.

In the second memorandum, the plaintiff claims that Defendant Nurse Deaton spoke with the plaintiff's mother on several occasions and made promises that the plaintiff's eye would be treated, but that nothing was ever done. Mrs. Morris, reports the plaintiff, is the nurse who always claimed that she had no gauze. "As a result of not having gauze and it being exposed so much in the Jail, . . . my eye socket become grossly infected." The plaintiff finally reports speaking with

Defendant Clark on two occasions. "He told me that he would take care of the matter but he never did."

As to the exhaustion issue, the plaintiff broadly reports that she presented the facts relating to each claim set forth in the complaint in the prisoner grievance procedure. She more specifically reports filing grievances in September 2004 and October 2004 and raising the following claims: "The medical staff, (nurses) not treating my eye socket properly, [and] it becoming grossly infected." She reports filing her grievance with defendant Clark and "The Judge." The result was, according to the plaintiff, "NOTHING!" She reports that she did not appeal the decision to a higher official or to the jailer because she "got transported to prison" in December 2004.

## II. <u>ANALYSIS</u>

The Prison Litigation Reform Act of 1995 ("PLRA") established an administrative exhaustion requirement codified at 42 U.S.C. § 1997e(a), which provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In enacting this provision, Congress imposed a prerequisite upon prisoners seeking to bring conditions-of-confinement claims under 42 U.S.C. § 1983. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies is now mandatory, rather than discretionary. *Id.*; *Brown*

*v. Toombs*, 139 F.3d 1102 (6th Cir. 1998). "[T]he purpose of the exhaustion requirement is to provide states the first opportunity to resolve problems themselves, [and] an inmate who has not pursued available administrative remedies may not yet proceed in federal court." *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003).

"[A] prisoner who has presented his or her grievance through one complete round of the prison process has exhausted the available administrative remedies under 42 U.S.C. § 1997e(a)." *Thomas v. Woolum*, 337 F.3d at 733. A prisoner "does not exhaust his administrative remedies when he fails to commence the grievance process or to run the gamut of potential appeals," *id.* at 726-27, and he "cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). A prisoner must also "administratively exhaust his or her claim as to each defendant associated with the claim," *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003); *Hartsfield v. Vidor*, 199 F.3d at 309, and complete exhaustion of administrative remedies is required even if the administrative process cannot provide the plaintiff with the relief he seeks. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Finally, "the PLRA requires a complete dismissal of a prisoner's complaint when that prisoner alleges both exhausted and unexhausted claims." *Jones Bey v. Johnson*, 407 F.3d 801, 805 (6th Cir. 2005)

5

(adopting the total exhaustion rule).

The plaintiff has the burden of pleading exhaustion of administrative remedies. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). To establish exhaustion of available administrative remedies, a prisoner should attach to the complaint any decision demonstrating the administrative disposition of her claims. *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999); *Brown v. Toombs*, 139 F.3d at 1104. If written documentation is not available, a prisoner must describe with specificity the administrative proceeding and its outcome. *Knuckles El v. Toombs*, 215 F.3d at 642. "A plaintiff who fails to allege exhaustion of administrative remedies through 'particularized averments' does not state a claim on which relief may be granted, and his complaint must be dismissed *sua sponte*." *Baxter v. Rose*, 305 F.3d 486, 489 (6th Cir. 2002) (quoting *Knuckles El v. Toombs*, 215 F.3d at 642, and citing *Brown v. Toombs*, 139 F.3d at 1104).

> [A] plaintiff, who fails to make a sufficient allegation of exhaustion in their initial complaint, [must] also not be allowed to amend his complaint to cure the defect. If the plaintiff has exhausted his administrative remedies, he may always refile his complaint and plead exhaustion with sufficient detail to meet our heightened pleading requirement, assuming that the relevant statute of limitations has not run.

*Baxter v. Rose*, 305 F.3d at 489.

The Jefferson County Corrections Department has an inmate grievance procedure in place. *See* Policy 11.14(IV) (referencing 2-ALDF-3E-11, 501 KAR 3:140, Sec. 6). All inmates receive "a written copy and an oral explanation of the

6

grievance procedure at orientation." An inmate is first required to attempt to resolve a grievance informally. If the grievance cannot be resolved informally, the inmate may submit a formal written grievance. The following is a summary of the inmate grievance procedure if the grievance is not resolved at the informal stage.

> [T]he form is forwarded to the shift commander for review. The shift commander attempts to resolve the grievance and completes a written response. The shift commander has five (5) working days to accomplish this process. . . . If the grievance is not resolved, a copy of the grievance is returned to the inmate and the inmate is informed that he/she has five (5) working days to appeal the decision to the appropriate Section Head. . . . If it is not resolved, the Section Head completes the form and returns a copy to the inmate. The inmate is then told that he/she has five (5) working days to appeal the decision to the Lt. Colonel. . . If the grievance is still not resolved at this stage, the inmate has five (5) working days to appeal the decision to the Chief, Department of Corrections.

The grievance procedure contains a section describing how either the inmate or a staff member may obtain an extension of the time limits and additionally provides that "[a]bsent an extension, expiration of response time limits entitles the inmate to move on to the next step in the review process."

In the instant action, the plaintiff has failed to meet her burden of proving exhaustion of available administrative remedies. First, she fails to attach a copy of the grievances to her complaint. Second, and notwithstanding this failure, she also fails to allege that she followed the grievance procedure through its final stage. In fact, it is unclear whether the plaintiff actually *filed* any grievances. In the complaint form, she indicates that she filed grievances with Mr. Clark in September and October 2004, but in an attached memorandum, she advises that she "spoke

7

directly to Mr. Clark twice." To the extent that she made verbal complaints to Mr. Clark, such action is insufficient to meet the exhaustion requirement as a prisoner must avail herself of the prison grievance procedure. *See generally Freeman v. Francis*, 196 F.3d 641, 644-45 (6th Cir. 1999); *see also Shephard v. Wilkinson*, No. 01-3665, 2001 WL 1563934, at *1 (6th Cir. Dec. 5, 2001) ("[A] prisoner must utilize the formal grievance process provided by the state; he cannot comply with the requirements of § 1997e(a) by informally presenting his claims."); *Anderson v. Hamblen County Sheriff's Dep't*, No. 2:05-CV-53, 2005 WL 1266684, at *2 (E.D. Tenn. May 26, 2005) ("A verbal complaint to a prison official, which is made in lieu of utilizing an established grievance procedure, is insufficient to show administrative exhaustion of claims.").

To the extent that the plaintiff actually filed two grievances, she fails to allege that she did anything more than present her grievances at the initial stage of the process. To elaborate, she claims that she utilized the jail's grievance procedure by filing grievances in September and October 2004 and that nothing was done. Yet, she fails to allege that she moved on to the next step in the process. In fact, she concedes that she did not file an appeal of her grievance, citing her transfer in December 2004 as the reason for such failure. Each step in the grievance procedure, however, requires a response within 5 days and permits the grievant to move on to the next step in the process if the time has expired.[2]

---

[2]The Court is well aware of the Sixth Circuit's holding in *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989 (6th Cir. 2004), *cert. denied*, *Allen v. Corr. Corp. of Am.*, 125 S. Ct.

Thus, the plaintiff had ample time in which to appeal her September and October 2004 grievances to completion prior to her transfer in December 2004. Finally, the plaintiff fails to allege that she named any of the specific defendants in the grievances that she filed,[3] and such failure is also cause for dismissal.[4]

As the averments in the complaint fail to demonstrate that the plaintiff has fully exhausted available administrative remedies all the way through to the Chief of Corrections, the instant action must be dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a). *Boyd v. Corr. Corp. of Am.*, 380 F.3d at 994 (6th Cir. 2004) ("A dismissal under § 1997e should be without prejudice.").

The court will enter a separate order consistent with this opinion.

---

1639, 2005 WL 637210 (U.S. Mar. 21, 2005), that "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." *Id.* at 996. The grievance process in *Boyd*, however, did not allow the prisoner to proceed if he received no answer. *Id.* ("Boyd, in contrast, was required to wait for a grievance officer to make a decision regarding his formal grievance before he could appeal to the warden."). Thus, no further procedure was available to Boyd. Such is not the case here, where there is a specific provision that allows an inmate to move forward despite inaction by a corrections official.

[3]As explained by the Sixth Circuit Court of Appeals,

The requirement that a prisoner file a grievance against the person he ultimately seeks to sue does not impose a heightened pleading requirement upon would-be § 1983 plaintiffs. It only assures, as envisioned under the PLRA, that the prison administrative system has a chance to deal with claims against prison personnel before those complaints reach federal court.

*Curry v. Scott*, 249 F.3d at 505.

[4]Even if the plaintiff's purported mention of "Nurses" in her grievances is sufficient to identify Defendants Deaton and Morris, the plaintiff fails to allege that she filed a grievance against Defendant Clark. Thus, the Sixth Circuit's total exhaustion requirement is not met, *see Jones Bey v. Johnson*, 407 F.3d 801, and as already determined, the plaintiff did not complete the grievance process.

9

<u>The clerk of court shall send a copy of this opinion to the plaintiff, the defendants, and the Jefferson County Attorney</u>.

Signed on  July 1, 2005

*Jennifer B. Coffman*
**Jennifer B. Coffman, Judge**
**United States District Court**